OPINION OF THE COURT
Per Curiam.
Final judgment, entered January 9, 2006, reversed, with $30 costs, and final judgment awarded to tenants dismissing the petition. Appeal from order, entered March 23, 2006, dismissed, without costs, as academic.
The facts underlying the landlord’s nonprimary residence claim, largely uncontroverted, are summarized as follows. The elderly tenants, husband and wife, continuously resided in the subject East 57th Street rent-stabilized apartment from the inception of the tenancy in August 1982 until October 2000, when they vacated the premises based upon the presence of a severe mold condition. Based upon the mold infestation and other apartment conditions previously found to be “utterly deplorable” (Birrenbach v Goldman, 10 Misc 3d 129[A], 2005 NY Slip Op 51918[U], *1 [2005]), tenants sought and obtained various forms of relief, including the imposition of substantial civil penalties against landlord, the issuance of a Division of Housing and Community Renewal rent reduction order extending through October 1, 2004, and a judicial finding that tenants were constructively evicted from the apartment between October 2000 and June 2002. Although it was determined in the first of two prior nonpayment summary proceedings between the parties that landlord satisfactorily remedied the dangerous mold condition by June 2002, a bona fide dispute over the habitability of the premises continued well beyond that time. In this regard, testing undertaken by environmental consultants hired by both sides produced “mixed results” as to the continued presence of mold, with landlord’s own consultant finding what was described in a prior court decision as “small areas of fungal growth” in certain areas of the apartment as of September 2003. Significant also is that landlord commenced apartment-wide restorative repairs in or around December 2003, by replastering and painting walls and ceilings, replacing baseboards, and refinishing floors. While the parties offered divergent accounts *83 of the relevant chronology, the landlord’s own trial evidence shows that the repair work continued through at least March 2004, and that tenants resumed full-time occupancy of the apartment no later than September 2004. Prior thereto, and throughout the period of the tenants’ constructive eviction and the ensuing repairs, the tenants stayed with a relative at the latter’s apartment in Queens, and testified, without contradiction by landlord, that they kept their furniture and most of their personal belongings (“wrapped” in boxes) in the subject apartment.
On this record, and considering the entire history of the tenancy (see 615 Co. v Mikeska, 75 NY2d 987, 988 [1990]), the tenants’ delay in resuming occupancy of the apartment following their constructive eviction does not support a finding of nonprimary residence (see Ascot Realty LLC v Richstone, 10 AD3d 513 [2004], lv dismissed 4 NY3d 842 [2005]). It simply cannot be said that at the time of service of the underlying termination notice in May 2004 — shortly after the apartment was refurbished and while tenants temporarily stayed in a relative’s apartment in Queens — tenants had abandoned the subject apartment as their primary residence (id.). The judicial findings made in resolving the parties’ prior rent disputes that the apartment was habitable as of July 2002 do not preclude a finding here that tenants’ absences after that time were excusable for purposes of primary residence analysis. Exercising our authority to review the record developed at the nonjury trial and render the judgment warranted by the facts (see Northern Westchester Professional Park Assoc, v Town of Bedford, 60 NY2d 492 [1983]), we reverse the possessory judgment awarded to landlord and dismiss the holdover petition.
McKeon, EJ., McCooe and Schoenfeld, JJ, concur.